Our next case is United States v. Wells 20-1228. Counsel, you may proceed, Mr. G. Thank you, Your Honor. Good morning. May it please the court. We're here today, I want to focus on the interpretation of two statutes, section 2241A1 and 113A1. First, with regard to 2241A1, the question that we've presented is whether the district court properly instructed the jury on the elements. And specifically, as we pointed out, we republished the jury instruction number 12 in our opening brief. The court omitted a mens rea from one of the elements of 2248A1, specifically the one relating to the use of force to cause a victim to submit to sexual assault. We think that was an error. It was plain error, and it substantially affected the substantial rights of Mr. Wells. Counsel, wasn't that instruction stipulated, too? It was not, and more specifically, we don't have any evidence that was submitted beyond the statement in a filing in the district court. There was no transcript of any stipulation to that instruction, and the filing itself, the submission of instruction number 12, was not signed by Mr. Wells' counsel or by Mr. Wells. Well, are you suggesting, then, that the government misrepresented to the court when it told the court that the parties had stipulated to 16 of the proposed instructions? No, Judge Mathison, I wouldn't do that. I only point out that there's no signature on that stipulation by Mr. Wells' counsel, and the case law requires that before there can be a waiver of rights, there has to be an intentional relinquishment of that right, and the record does not support such a finding by this court. Let me just follow up with one more question about this. When the government submitted the proposed instructions, they included a proposed non-stipulated instruction. Why doesn't that indicate that the defense stipulated to the other instructions? Well, for sure, we have the representation from the government in that submission that instruction number 12, what ultimately became number 12, was stipulated. My point is simply that either from the absence of Mr. Wells' lawyer's signature on that motion, on that submission, and the inference that, Judge Mathison, you're drawing from the non-stipulated instruction. Well, no, I'm not drawing any inference yet. I'm just asking you a question. Sure. I don't believe that the submission of a non-stipulated instruction suggests that there is a waiver, or that there is a stipulation as to the others, or more importantly, that the record would support the intentional relinquishment. And as we pointed out in our papers, Judge Mathison, even if it were stipulated, what became instruction number 12, the actual instruction number 12 is different from what was submitted by the government in the papers you've referenced. It's not different in any sense that's material to your argument here. Well, I don't know if that's true. Well, explain to me how it is different. Sure. Relates to your argument that you're now making. Well, the argument that we're making has to do with whether or not, oh, are you referring to whether or not knowledge was... Right. Yes. Yes, that's true. With regard to both the instruction that was submitted by the government and with regard to the actual instruction number 12, that's correct. Knowledge was not required as to use of force. What is the material difference between what was in the stipulation and what was given? Well, Judge Murphy, we did point this out in our papers, but among the differences is how intent was referenced and whether the jury was required to or was given permission to make a finding. Must versus may and intent versus specific intent as two examples. And I don't know, Judge Murphy, if you have a quizzical look on your face. I did because I'm looking at the instruction given and the answer doesn't make sense to me. I'm not saying that's your fault. Well, if I might, I'd like to come back to that during the rebuttal and I don't have... That is perfectly fine. Okay. I don't have the page reference in mind, but I actually identified these in the reply brief. The difference is between the offered instruction... Go ahead. Take care of it and rebuttal. Okay, sure. And so with regard to this question about whether knowingly should also be an element of the use of force, we cited a number of cases. And we think these cases are exposit of both the plain error and of the harm from the absence of that mens rea requirement. And all of these are Supreme Court cases. Of course, there are many ten circuit cases that follow them. But they are Flores-Figueroa, there is Excitement Video, there is ReHIFE, and there is Liparoto. These are not decades old Supreme Court cases. I mean, ReHIFE, I think, was 2019. So these are all recent cases that actually require that when knowingly precedes an essential element, that mens rea must be applied to each one of these elements. And I appreciate the government's attempt to distinguish these cases, but the distinction is not effective because in every one of these Supreme Court cases, there is no exception to this general rule. Assuming that we agree with you on that point, didn't the evidence nonetheless show that Mr. Wells knowingly used force? Well, so here, I think we have to return to the plain error standard. And this court has repeatedly said that when the error is of constitutional dimension, we relax the plain error rule. Now, let me turn to the facts that are implicated by your question, Judge Matheson. There is substantial evidence of force being used during the course of this assault. The point that we made is that in count one, the 2241 count, is charging Mr. Wells with digital penetration. If you look at the record, Volume 8, at 75 and 76, it talks about that's where the victim is testifying about the actual force that was used. If you look at what she says with regard to digital penetration, this is occurring after she has testified about a series of physical acts used against her. Then the government asks the question, at some point, meaning it's not clear from the testimony, but the question is, at some point, did he remove your stockings? And she says, yes. And then comes the testimony about first an attempt to use kind of a wooden fork or something like that. And then comes the attempt to use the fork to do penetration. And then comes the digital penetration testimony. When we look at that testimony about digital penetration, there is not use of force. Now, the government, in its answer brief, expands when the force is used. So as I read the government's brief, it's saying that force was used throughout the entire episode. But our contention is that that's not what the government charged. Count one charges force with respect to digital penetration. And this court must turn to those pages of the transcript that talk about digital penetration. With regard to section 113A1, I wanted to point out that, yes. Couldn't. Don't we have to look beyond that immediate part of the transcripts? Because force applied before a specific act is still relevant as to the specific act, even though force may not have occurred right at that very moment. I mean, I didn't voluntarily take my stockings off. I did it because of the force that was being applied. And then comes the digital penetration testimony. Why isn't that the proper way to look at it? Well, OK, so this temporal aspect of force, I think, has to be cabined in some way. I think we have some help here from the statute and from the case law, which talks about how the force that is relevant is the causative force. So, for example, something that happened two minutes before but did not was not relevant to the causation is not part of the analysis. That's what I would suggest to you, to your honor. And with regard to section 113A1, the question is whether that intent mens rea applies to all of the elements of 2241. I think that three cases, excuse me, two cases, I think, are key to deciding that question. One is the Rehife case. And Rehife does not involve 2241, but it does involve a, I would say, an analogous situation regarding the felon in possession statute. There you have 922G, and then you have the question of whether knowingly applies in the punishment section, penalty section, whether knowingly applies to both kinds of conduct, the firearms possession by that particular defendant and his status as a felon. The answer was yes, and the presumption that was applied in Rehife is that the mens rea applies to all the elements, even when they are in different statutes. So that's one point. The second point is the court decided a case in 2018. Judge Tymkiewicz decided United States v. Curry. In the United States v. Curry, it was a 113A1 case. And the question was in the context of murder, assault with intent to commit murder. And in that case, Judge Tymkiewicz held that to prove assault with intent to commit murder, the government must establish the intent required for, quote, a completed murder offense, close quote. So that suggests, in that case, that the court is applying that mental state to every element of the predicate or of the related offense. In that case, it was murder. In our case, it is 2241. And we also can apply… Counsel, we're winding down here. We've only talked about your first issue. I just had a question. I wanted to ask you about your double jeopardy argument. Yes. And has any court found that Section 113A1 is a lesser included offense of 2241A1? Not that I have been able to find, Your Honor. And I would reserve the rest of my time for you, by the way. Thank you. Thank you, Counsel. Mr. Graves. May it please the court, Jeff Graves for the United States. As you're aware, there are many complicated questions concerning the application of the knowing mens rea to 2241A1. So I propose to start with the easy answer that the court touched on at the beginning of the argument. Appellant waived this argument by stipulation. The parties pursuant to Judge Blackburn's rules jointly submitted 16 jury instructions, including an instruction that is materially different to the instruction that was actually given. In one additional citation to the record I'd point the court to, Judge Blackburn actually says as much at Volume 8, 679, quote, many of the instructions are in fact stipulated to. Our position is that that stipulation precludes review. And moving again to one of the easy answers in this case, any error was certainly not plain. No court has reached this issue. And in fact, Mr. the appellant indeed says as much in his opening brief when he refers to this as a matter of first impression. Turning to the end of the conversation from appellant's argument, in order for you to find that there was an actual impact on the trial in this case, you need to you need to believe two things. First of all, that the actual act of digital penetration is the only force that is relevant. That's simply not the case. The forcefulness itself of the penetration is not the issue, but the force that caused the sex act, which is the digital penetration. Here the court can look at Volume 8, pages 172 to 179 for the detailed description of this brutal assault. Mr. Wells beat his victim with a club until she was bloody. He pushed her down onto the sleeping bag, repeatedly kicked her in the stomach, telling her that if there was any chance she was pregnant, the baby would be dead. Ripped off the black leggings, shoved a wooden club inside of her vagina, and then at that point digitally penetrated her. That's the force that caused the digital penetration in this case. The second thing that appellant must argue is that the mens rea knowingly can be overcome by voluntary intoxication, which it simply cannot be. In fact, if you look at the voluntary instruction, the voluntary intoxication instruction that was given in this case, and that's at Volume 1, pages 366 to 67, the jury specifically instructed that for the offenses that don't have a specific intent instruction, they may not consider voluntary intoxication as a defense to those counts. But even if you somehow could do that, even if somehow you could consider voluntary intoxication as to the mens rea of knowingly, the jury was, in fact, given a voluntary intoxication instruction for Count 1. We had to show in Count 1 that there was a specific intent to abuse, humiliate, harass, or to gratify the sexual desire of any person. The jury rejected that defense. The instruction, importantly, in this court looking at the issues raised by Flores-Figueroa and by the Raja Yeef case, the linchpin in both of those cases is whether or not the reading of the instruction that was given would criminalize otherwise innocent conduct. And I direct the court's attention to the instruction that was given and what the jury necessarily found. First of all, that Wells knowingly caused a sex act. Second, the jury found that Wells, in fact, used force. Third, the jury found that the sex act was digital penetration with the specific intent to abuse, humiliate, harass, or to gratify the sexual desire of any person. To believe Appellant's argument, the court needs to find that a subjective but unreasonable or incorrect belief that this was accomplished non-forcefully renders all of that innocent conduct. If you look at the context where this statute exists and the legislative history as to how it came to pass, Congress's intent here was to eliminate the problematic doctrine of consent and resistance. Appellant's reading of the statute renders the victim an entirely volitionless object. The appropriate cause of a sexual act is the victim's consent. Even beyond those arguments, grammar is clearly still relevant to this court's interpretation, even after Flores-Figueroa and even after Raja Yeef. There has been some conflicting lowercase decisions on whether or not... Your view is that the way you view the structure of the statute, your view is that the use of force is not an element, correct? Your Honor, I think that what the jury was instructed of and what we submitted was that by doing... did so by the use of force is, in fact, an element of the offense. Then doesn't the Supreme... don't the Supreme Court cases say that once it's an element, you have to show knowingly? Isn't that the thrust of those Supreme Court cases? Your Honor, I respectfully would push back on that. I think that there's an implication that there's a presumption that knowingly would extend to that, but there's a litany of examples where that doesn't, in fact, happen. The Raja Yeef Court points out the jurisdictional elements. The Ninth Circuit found in United States v. Price, which I understand there was a lot of ink spilled on both sides of that issue, found that knowingly did not extend to the adverbial prepositional phrase. I don't think it's as automatic as appellant would have it. There's no automatic or mechanical application of this. And if you look at the Raja Yeef decision, there's still... the first case that's cited in that decision is still excitement video. The question that they're trying to answer is whether or not a contrary reading would criminalize otherwise innocent conduct. And that's the reason I'm focusing the court's attention on what you would actually have to believe. And appellant really never is able to articulate how someone could use force to knowingly cause a sex act, but have a subjective, unreasonable, or incorrect belief that all of that was not forceful. The only way to get there is voluntary intoxication, which is simply not a defense to mens rea. To this specific mens rea. And Your Honor, again, I briefly mentioned the Price case. And that is a good example of why this court has... we have a couple of different ways to avoid that issue because there's competing decisions on both sides. And that case is currently pending a cert decision. But what the Ninth Circuit found there in a similar and analogous statute is if someone commits a... knowingly commits a sex act without the victim's permission, because without the victim's permission is an adverbial prepositional phrase, knowingly doesn't reach that. I would submit to this panel that this case is much more clear than Price. Because we're not dealing with the status of another person, or as in Rai Ha-Yif, the status of the defendant himself. We're dealing with an action. Something that the defendant, in fact, did. And if you look at the way the jury instruction was written as submitted to the court, that relationship is properly captured. That Mr. Wells did so by the use of force. That is all that is required for a conviction. That's our position. Your Honor, I'd like to turn briefly to... unless there's any additional questions on that issue. I'd like to turn briefly to the multiplicity argument. Appellant finds multiplicity by conflating force and assault. And there's a litany of case law out there that says essentially assault is not force necessarily. That what assault is, is causing someone to be in a reasonable apprehension of potential force. Force is simply just a different thing. And because there's different elements for 113 sub a sub 1 and 2241 sub a sub 1, those two statutes are not multiplicious. And as this as this court pointed out in the question to the appellant, there's simply been no decision one way. There's been no case law whatsoever adopting that position. And so we would argue that that necessitates that under plain error review, this court can't reverse on that fact. And your honors, unless there's any additional questions on either of those issues, the government would ask the court to affirm the conviction to affirm the sentence. And I would see the remainder of my time. Counsel, I have a question about one of the sentence issues, the obstruction of justice issue. I'm not understanding how the apology letter can be an obstruction of justice. Could you explain that? Your honor. Yeah, I think there's two different ways to approach that. First of all, it's a violation of the court's order. It's a violation of the court's order that was imposed at the outset of the case because the government requested in a case involving endemic domestic violence that there be no communication between Mr. Wells and his victim in this case. So that's that's point one. Well, but that may be the case that he violated a no contact order. But I don't see where it follows from that, that we have obstruction of justice violated, no contact order. That's not good.  Your honor, I think that the the other component to take a take a close look at. And this is what was discussed in the McHenry case from a difference from a sister circuit where the court found obstruction, where the defendant, after being convicted, wrote a letter, a seemingly innocuous letter asking for money. The court found that that was obstruction. And of course, the context is important. This is a domestic violence victim. This is someone who Mr. Wells knows is going to potentially show up at his sentencing hearing. Is there anything in the record to show that the government intended to have the victim appear at the sentencing? Your honor, I'm not aware of anything in the record. I'm a little biased because, of course, I was trial counsel. What I can tell the court is the victim had the absolute right to be present at the sentencing here. What what did the letter obstruct the victim from doing? Your honor, our position is that it obstructed it potentially obstructed the victim's inclination to appear at court and to discuss with the court the impact this has had on her life. In addition to that, it's very much like the case where the defendant violated a court's order by refusing to give to give a voice exemplar. It's a violation of the court's order. And if you look at the actual if you look at the motion that the government submitted asking for the no contact order and you look at the order itself. And frankly, the trial testimony in this case and the government's notice of four or four B, this is clearly an instance of domestic violence and witness tampering is an endemic problem. It's severe and witness tampering. Counsel, the trial's over when when this letter was was was sent. I'm not I'm not seeing your where you've made a witness tampering argument. Let me just ask this. At sentencing, did the district court make the requisite findings for an obstruction of justice enhancement? Did it make any findings? Your honor, my position would be that they did that the court did. Well, what were they? First of all, the court, the court looked at the letter. I think it's clear from the. I'm asking what are the findings? Of course, the court looked at the letter. But what are the findings? Did it make any findings other than just pure speculation? Your honor, I guess I posit whether this court's going to classify this as speculation. But what the court says that I know I'm asking you, I clearly have an issue with this particular and I'm not hearing an answer to these questions. Your honor, what the court what the court says is that despite the innocuous appearance, it found that it's clear that Mr. Wells intended to exert influence and control over the victim. Did the court really say that? Yes, your honor. That's at the record. Volume eight, page 763. Thank you, counsel. Any other questions for Mr. Graves? All right. Mr. G, you have some limited rebuttal time. Thank you. Judge Murphy, I wanted to get back to your question. And I would refer the court to page 21 of our reply brief where we talked about the differences between the tendered instruction and instruction that actually was given during instruction number 12. With regard to the government's argument on multiplicity, it says that we conflated assault and force. Not exactly. We would say that assault is subsumed within force. And assault, as used by the government, is a tort theory of assault, not the crime. And I ask the court to take a look at the jury instructions with regard to this issue. And I see my time is up. Thank you, counsel. We appreciate the arguments from both of you this morning. The case will be submitted and counsel are excused.